UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EVAN MOORE,<br><br>Defendant. | No. 1:23-cr-00077-ADA-BAM-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br>(Doc. 21) |

Evan Moore moves the Court to suppress a firearm that the government seized from his vehicle. (Doc. 21) He alleges that the officers acted without probable when conducting the vehicle search. (*Id.* at 1.) Because the Court determines the officers had reasonable cause to make the traffic stop and probable to search the vehicle, the motion is **DENIED**.

**I.   Procedural History**

On March 30, 2023, the government charged Defendant with one count of 18 U.S.C. § 922(g)(1)—a Felon in Possession of a Firearm. (Doc. 1 at 1.) That day, U.S. Magistrate Judge Sheila K. Oberto issued a warrant for his arrest. (Doc. 2.) On April 11, 2023, U.S. Magistrate Judge Stanley A. Boone issued a detention order, after a hearing, ordering Defendant to be detained. (Doc. 11 at 1.) Defendant filed the instant motion to suppress on June 5, 2023. (Doc. 21.) On June 6, 2023, the Court set the motion's briefing schedule. (Doc. 27.) On July 3, 2023, the Government timely filed its opposition. (Doc. 30.) On July 17, 2023, Plaintiff filed a reply.

(Doc. 31.)

## II. Factual Background

On December 18, 2022, at approximately 11:45 a.m., Madera Police Department ("MPD") Officer Nathan Munoz was on duty. (Doc. 21 at 2; Doc. 30 at 5.) Officer Munoz was traveling eastbound on Sunrise Avenue, by Vineyard Avenue, when a black Cadillac caught his attention. (Doc. 21 at 2; Doc. 30 at 5.)[1] Officer Munoz observed the Cadillac abruptly turn northbound onto Vineyard Avenue at a fast speed. (Doc. 21 at 2; Doc. 30 at 5.) Officer Munoz followed the Cadillac, observing that the rear taillights of the car obstructed the amount of light being emitted. (Doc. 21 at 2; Doc. 30 at 5.) Officer Munoz accelerated his patrol vehicle up to approximately 50 miles per hour in a 25-mile-per-hour zone. (Doc. 30 at 5.) Officer Munoz also observed that the Cadillac failed to come to a complete stop at a stop sign on Vineyard Avenue. (*Id.*) Then, Officer Munoz followed the Cadillac to East 5th Street near Lyons Street, where he observed the Cadillac make an abrupt turn into an alleyway. (Doc. 21 at 2; Doc. 30 at 5.) The Cadillac backed into a parking stall and turned off its lights. (Doc. 21 at 2; Doc. 30 at 5.) Officer Munoz pulled into the alley and turned on his emergency overhead lights, which automatically activated the patrol vehicle dash camera. (Doc. 30 at 5.)

Officer Munoz approached the Cadillac parked in a stall and advised Defendant that this was a traffic stop because the vehicle had tinted windows. (Doc. 21 at 3; Doc. 30 at 5; Doc. 30-3 at 00:13.)[2] Defendant denied that he had tint on his windows and rolled his window up partially, revealing clear glass. (Doc. 30-3 at 00:13.) Officer Munoz responded saying, "[i]t looked like you did back there" and then said that there were a couple of reasons why he pulled Moore over, including speeding and not stopping at a limit line. (*Id.* at 00:29.) When asked, Moore provided his license and registration. (*Id.* at 00:45.)

Officer Munoz asked whether Moore was on probation or parole, and Moore denied that

---

[1] There is no patrol vehicle dash camera video available to confirm the events leading up to the stop of Defendant. (*See* Doc. 21 at 2 ("During the discovery process, counsel for defendant Moore was advised that there was no dash cam video on any police vehicle involved in this case to verify the contentions made by Officer Munoz concerning probable cause for this traffic stop.").)

[2] Officer Munoz's body camera footage recorded the entirety of the stop and has been reviewed alongside the parties' statement of facts. (Doc. 21 at 3; Doc. 30-3 ("Munoz Body Camera").)

1 he was.  (*Id.* at 00:50.)  As Officer Munoz inspected Moore's license and registration, Officer
2 Munoz asked whether Defendant had "guns, drugs, or large sums of money over $10,000" in his
3 car, and Moore denied this.  (*Id.* at 01:37.)  Officer Munoz then told Moore that he smelled "a
4 little bit of burnt marijuana" coming from the car.  (*Id.* at 01:43.)  Though Moore denied that there
5 was an odor of marijuana, he stated that he had marijuana in the backseat of his car and provided
6 Officer Munoz his medical marijuana card.  (Doc. 21 at 4; Doc. 30 at 6.)

7 Officer Munoz asked whether Moore lived in the area, and Moore explained that he was at
8 the apartment complex to visit a friend.  (*Id.* at 02:37.)  Moore then placed a phone call and
9 refused to comply with Officer Munoz's order that he hang up the phone and not make calls
10 during the traffic stop.  (*Id.* at 02:47-02:54.)  Officer Munoz then ended the call ordered Moore
11 out of his car.  (*Id.* at 03:10.)  Pursuant to a pat-down search, Officer Munoz asked whether
12 Moore had a weapon on his person, and he said no.  (*Id.* at 3:28-3:30.)  After patting him down,
13 Officer Munoz directed Defendant to stand at the front of his vehicle. While moving to the front
14 of the car, Moore told Officer Munoz he could not search his car.  (*Id.* at 03:52.)

15 Officer Munoz walked to the passenger side of the car to see the backpack, which Moore
16 had indicated contained marijuana.  (*Id.* at 5:06.)  Officer Munoz reported that he saw "a lot of
17 baggies" in the backseat.  (*Id.* at 6:13.)  After Officer Munoz asked, Moore denied that he sold
18 marijuana.  (*Id.* at 06:27.)  He explained that he was intending to weigh out some marijuana and
19 put it in a smaller bag to take inside and smoke with his friend. Officer Munoz then consulted
20 with another officer and explained what he had observed. They agreed that search of Moore's
21 vehicle was permitted.  (*Id.* at 07:22.)  Officer Munoz told Moore that the officers had probable
22 cause to believe that he was selling marijuana.  (*Id.* at 7:25.)  In response, Moore said, "you can
23 search my car," and reported that he had about a pound and a quarter of marijuana in his car that
24 he just obtained.  (*Id.* at 7:38.)

25 Officer Munoz then placed Moore in handcuffs, while explaining that Moore was not
26 under arrest but that he was being detained.  (*Id.* at 7:55.)  Another officer placed Moore in
27 Officer Munoz's patrol car, and the officers began to search the car.  (*Id.* at 8:22.)  Officer Munoz
28 inspected the backpack in the backseat and found the marijuana in it, a digital scale and resealable

plastic baggies. (*Id.* at 09:22.) Also on the floor were more resealable plastic bags. During the search, another officer found a loaded firearm under the steering column. (*Id.* at 15:00; Doc. 30 at 7.) Throughout, Moore denied that he sold marijuana.

In connection with this motion, the government produced a citation issued to Mr. Moore[3] two years before the search for having modified taillights in violation of California Vehicle Code section 26101(b). (Doc. 30-6) Mr. Moore's attorney confirmed that the condition of the taillight was unchanged from October 2020 when the citation was issued, and December 2022 when the search occurred.

### III.    MOTION TO SUPPRESS

The Fourth Amendment states, "(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "(T)he 'seizure' of a 'person,' which can take the form of 'physical force' or a 'show of authority' that 'in some way restrain(s) the liberty' of the person." *Torres v. Madrid*, 141 S.Ct. 989, 995 (2021) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  Traffic stops, "even if only for a brief period and for a limited purpose," are "seizures" within the meaning of the Fourth Amendment, and therefore are "subject to the constitutional imperative that (they) not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002) ("The Fourth Amendment's prohibition against unreasonable searches and seizures applies to investigatory traffic stops.").  "A police-initiated traffic stop is reasonable under the Fourth Amendment if the police stop the vehicle because of a 'reasonable suspicion' that the vehicle's occupants have broken a law." *United States v. Hartz*, 458 F.3d 1011, 1017 (9th Cir. 2006); *United States v. Lopez-Soto*, 543 F.3d 1080, 1087-1088 (9th Cir. 2008).  An officer making a traffic stop "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *see also United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013)

---

[3] The officer who issued the citation was not Officer Munoz though, Officer Munoz responded to the scene.

(en banc).

The reasonable suspicion standard is intentionally abstract, and courts are to give "due weight" to the factual inferences drawn by law enforcement officers. *Arvizu*, 534 U.S. at 273-77; *see also United States v. Edwards*, 761 F.3d 977, 983 (9th Cir. 2014) ("Reasonable suspicion 'is dependent upon both the content of information possessed by police and its degree of reliability,' and '(t)he standard takes into account the totality of the circumstances—the whole picture.'"); *Hartz*, 458 F.3d at 1017 ("Reasonable suspicion exists if 'specific, articulable facts . . . together with objective and reasonable inferences' suggest that the persons detained by the police are engaged in criminal activity").

It is the government's burden of establishing the admissibility of evidence obtained without a warrant. *See United States v. Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011) (noting that in determining whether statements were the product of an illegal search, "(i)t is the government's burden to show that evidence is not 'fruit of the poisonous tree'"); *United States v. Chamberlin*, 644 F.2d 1262, 1269 (9th Cir. 1980) (noting that determination of whether evidence was obtained by exploitation of an illegal act focuses on "the causal connection between the illegality and the evidence; and, the burden of showing admissibility rests on the prosecution"); *see also United States v. Karo*, 468 U.S. 705, 719 (1984) (where unlawfully obtained information was "critical to establishing probable cause" the exclusionary rule applies).

## IV.   DISCUSSION

### A. Officer Munoz had reasonable suspicion to conduct Defendant's traffic stop[4].

"The standard for determining whether probable cause or reasonable suspicion exists is an objective one; it does not turn either on the subjective thought processes of the officer or on whether the officer is truthful about the reason for the stop." *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016). "If, for example, the facts provide probable cause or reasonable suspicion to justify a traffic stop, the stop is lawful even if the officer made the stop

---

[4] "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons . . ." *Whren v. United States,* 517 U.S. 806, 809-10 (1996). There is no dispute that Officer Munoz detained Moore, so the Court make no further comment on this issue.

only because he wished to investigate a more serious offense." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)). "Likewise, if the facts support probable cause to arrest for one offense, the arrest is lawful even if the officer invoked, as the basis for the arrest, a different offense as to which probable cause was lacking." *Id.* (citing *Davenpeck v. Alford*, 543 U.S. 146, 153-55 (2004)). "The facts justifying the stop must be known to the officers at the time of the stop." *Id.*

The government argues that Officer Munoz had reasonable suspicion to conduct a traffic stop based on the totality of the circumstances. (Doc. 30 at 7-10.) The government contends that Officer Munoz observed that the taillights of Defendant's car were "smoked out," which obstructed the amount of light that could be emitted. (*Id.* at 3.) California Vehicle Code § 24600(e) provides that "Taillamps shall be red in color and shall be plainly visible from all distances within 500 feet . . ." The body-worn video footage shows Officer Munoz taking note of the condition of the taillights and discussing them with another officer, who concurred that the taillights were unlawfully tinted. (*Id.* at 3-4.) Officer Munoz attests that while following Moore's vehicle, he noticed the taillights were "smoked out almost to the point of being black." (Doc. 30-2 at 2) The video evidence demonstrates that this was a reasonable conclusion.

In the video, Officer Munoz reported that he saw Moore speeding, and that he accelerated up to "45-50 miles per hour in an attempt to catch up" to him. (Doc. 30-2 at 2) Officer Munoz attests that the area in which Moore was traveling had a posted speed limits up to 30 miles per hour. *Id.* In the video, Officer Munoz told another officer that Moore was "smashing away" from him and that he was "hauling ass," to the point that Officer Munoz was surprised he caught up with him. (Doc. 30-3 at 6:57, 12:07.) Clearly, driving a car over the speed limit violates California Vehicle Code § 22352. (Doc. 30 at 8.) Finally, the government argues that Officer Munoz observed Defendant fail to stop at a stop sign, violating California Vehicle Code § 22450. (Doc. 30 at 8.)

Given this evidence, the Court concludes that the officer had are specific, articulable facts that Moore had committed California Vehicle Code violations. *See Hartz*, 458 F.3d at 1017 ("Reasonable suspicion exists if 'specific, articulable facts. . . together with objective and

reasonable inferences' suggest that the persons detained by the police are engaged in criminal activity."). Therefore, considering the totality of the circumstances, the Court finds that Officer Munoz had reasonable suspicion to conduct Defendant's traffic stop.

**B. Officer Munoz had probable cause to search the car.**

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." *California v. Carney*, 471 U.S. 386, 390-391 (1985). There is an exception to this requirement for searches of vehicle known as the "automobile exception." *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) ("A search is not unreasonable if based on probable cause or facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained."). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Probable cause justifies the search of every part of a lawfully stopped vehicle and its contents that may conceal the object of the search. *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999).

Moore argues that because he provided his medical marijuana card, this should have ended Officer Munoz's probable cause analysis. (Doc. 21 at 6-7.) Defendant argues that the fruit of the poisonous tree doctrine applies, where Officer Munoz's lack of probable cause to search Defendant's car warrants the suppression of the firearm found during the search of Defendant's vehicle. *See Murray v. United States*, 487 U.S. 533, 536 (1988) ("The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, (internal citation omitted) . . .").

The government argues that Officer Munoz had probable cause to search the car because Moore admitted to possessing marijuana, and Officer Munoz observed several resealable baggies on the floor of Defendant's car.[5, 6] (Doc. 30 at 10.) Officer Munoz did not search the car

---

[5] Officer Munoz attests that these types of baggies are used to package narcotics for sale. (Doc. 30-2 at 3) In addition, he asserts that drug traffickers weigh their product for purposes of distribution. *Id.*

[6] Moore told Officer Munoz that "my bags broke open" as explanation for why the baggies were loose on the floorboard. (Doc. 30-3 at 6:06–6:25) The video shows that there are bags stuffed into the seatback pocket in addition to being scattered on the floor. (Doc. 30-3 at 9:35; Doc. 30-3 at 10-10:05)

immediately upon smelling the odor of marijuana. (*Id.* at 11.) Rather, Officer Munoz continued to question Defendant based on his observations. (*Id.*) The government argues that Officer Munoz considered Defendant's medical marijuana card, along with the other information that he had gathered throughout the stop. *See United States v. Phillips*, 9 F. Supp. 3d 1130, 1137 (E.D. Cal. 2014) ("[W]hen officers become aware that a suspect has a medical marijuana card, the officers must take that information into account when determining whether there is probable cause to conduct a warrantless search or arrest that individual."). The government argues that Officer Munoz had probable cause to search the car for violations of the California Health and Safety Code, particularly section 11352.1(a). (*Id.* at 12.)

The Court agrees with the government. Officer Munoz had probable cause to search Moore's car because he had diligently investigated to confirm or dispel his suspicions that Moore possessed more than the allowable amount of marijuana and was engaged in sales of the drug. California Health and Safety Code § 11352.1(a).[7] At the beginning of the stop, Officer Munoz smelled burnt marijuana emanating from the car and asked Moore whether he had drugs in his car. (Doc. 30-3 at 01:43.) Because the odor of marijuana alone does not provide probable cause for a warrantless search of a car, Officer Munoz continued questioning Defendant. *See United States v. Martinez*, 811 Fed. Appx. 396, 397 (9th Cir. 2020).

Moore said that he had marijuana in the back of his car and presented his medical marijuana card. (Doc. 21 at 4; Doc. 30 at 6.) This was not sufficient to require Officer Munoz to halt his law enforcement activity. *See Wilson v. City of Merced*, 2008 WL 4737159, at *5 (E.D. Cal. Oct. 28, 2008). Moore admitted to having marijuana in a backpack in the rear passenger seat and that he parked at the apartment complex to smoke it with a friend who lived there. (Doc. 30-

---

[7] The statute provides that:
> "It shall be lawful under state and local law, and shall not be a violation of state or local law, for persons 21 years of age or older to: (1) possess, process, transport, obtain, or give away to persons 21 years of age or older without any compensation whatsoever, not more than 28.5 grams of cannabis not in the form of concentrated cannabis; (2) possess, process, transport, purchase, obtain, or give away to persons 21 years of age or older without any compensation whatsoever, not more than eight grams of cannabis in the form of concentrated cannabis, including as contained in cannabis products . . . "

Cal. Health & Safety Code § 11352.1(a).

3 at 02:37.)

Officer Munoz saw through the windows of the car that there were "a lot of baggies" in the backseat.  (*Id.* at 5:06-6:13.)  After Officer Munoz asked whether Defendant sold marijuana, Moore denied that he did.  (*Id.* at 06:27.)  Officer Munoz eventually explained to Moore that he and the other two officers had probable cause and reasonable suspicion that he was selling marijuana and that they could search Moore's car without a warrant.  (*Id.* at 7:25.)  The Court agrees that with all the information known to him, Officer Munoz had probable cause to search Defendant's car based on his observations of a possible drug-based crime.  In response, Moore explained that he had about a pound and a quarter of marijuana in his car.  (*Id.* at 7:38.)  This further cements the officer's probable cause determination.

During the search of the car, in addition to the marijuana, digital scale and resealable baggies, the officers found a firearm.  (*Id.* at 15:00; Doc. 30 at 7.)  Because there was probable cause to search Moore's vehicle, the officers were justified in searching every part of the vehicle and its contents for evidence consistent with illegal sale of marijuana.  *Wyoming*, 526 U.S. at 301.  Consequently, searching the steering column was reasonable.  (Doc. 30-3 at 15:00; Doc. 30 at 7.)  Therefore, the government met its burden to establish that the seized firearm was not a result of an illegal search.  *See Shetler*, 665 F.3d at 1157.

**V.     No evidentiary hearing is warranted**

 "An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *See United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986*); United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); *United States v. Irwin*, 612 F.2d 1182, 1187 n.14 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972)). "[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a desire to cross-examine." *United States v. Marcello*, 731 F.2d 1354, 1358 (9th Cir. 1984); *United States v. Woodson*, 2011 WL 5884913, at *6 (N.D. Cal. Nov. 23, 2011) (denying a defense request for an evidentiary hearing because "mere refusal to accept the uncontradicted

9

evidence does not create a material issue of fact"); *United States v. Walker*, 239 F. Supp. 3d 738, 739 (S.D.N.Y. 2017) ("While [an evidentiary hearing] might have been warranted if there were important credibility issues that could not be addressed from the paper record, the defendant has made no showing that that is the case here."); *United States v. Martinez*, 992 F. Supp. 2d 322, 325–26 (S.D.N.Y. 2014) ("A defendant is not entitled to an evidentiary hearing in connection with a motion to suppress unless he can show that there are 'contested issues of fact going to the validity of the search'" and in the absence of an affidavit "by someone with personal knowledge that disputed facts exist" an evidentiary hearing is unnecessary) (citations omitted).

Despite contending that there are factual disputes, Moore doesn't contradict the salient facts. Instead, he offers actions the officer could have taken—i.e., operating the body camera while pursuing Moore's car or turning on his overhead lights—or conclusions that the officer could have come to without addressing the evidence as presented by the government. (Doc. 31) The Court disagrees that these claims would justify an evidentiary hearing.

On the other hand, at the hearing, Mr. Moore's attorney indicated that he wanted to cross-examine Officer Munoz about whether he remembered being present at the traffic stop of Mr. Moore in October 2020 would not yield helpful information. Mr. Moore's attorney ruminated that Officer Munoz could have remembered the car and the tinted taillights and, rather than seeing Mr. Moore commit any traffic infractions, simply relied upon his memory of the taillights and was, in fact, never pursuing Moore's car before contacting Moore.

There is simply no evidence to support this claim and no showing of a good faith basis that this was the case. Indeed, the evidence is to the contrary. Nearly immediately upon speaking to Mr. Moore and before there was any discussion and marijuana or other criminal activity, Officer Munoz told Moore that he had been following him for a significant distance. Officer Moore repeated this information to the other officers who arrived at the scene. The fact that Moore wants to cross-examine the officer in hopes of gathering helpful evidence is, as demonstrated by the authorities cited above, insufficient to justify an evidentiary hearing. Thus, the request for an evidentiary hearing is **DENIED**.

///

**C. Conclusion**

Accordingly, for the reasons set forth above, the Court **ORDERS**:

1. Defendant's motion to suppress (Doc. 31), is **DENIED**.

IT IS SO ORDERED.

Dated:   **November 29, 2023**

UNITED STATES DISTRICT JUDGE